UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MARIA ANDREU

                Plaintiff,

                                              CASE NO.: 17-21615-CIV-MORENO

-against-

HP INC. and HEWLETT PACKARD
ENTERPRISE COMPANY,

                Defendants.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT WITH PREJUDICE**

Plaintiff Maria Andreu ("Plaintiff") hereby files this response in opposition to Defendants HP, Inc. ("HPI") and Hewlett-Packard Enterprise Company ("HPE") (collectively, "Defendants"), Motion to Dismiss Plaintiff's Amended Complaint with Prejudice (the "Motion to Dismiss") [ECF No. 8].  For the reasons set forth herein, the Motion to Dismiss must be denied.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

1.    This action was filed by Plaintiff in the Circuit Court for the Eleventh Judicial Circuit for and in Miami-Dade County (the "State Court") on March 13, 2017.  Plaintiff's claims for sex and national origin discrimination and retaliation stem from Plaintiff's employment relationship with Defendants' predecessor, Hewlett-Packard Company ("HP"), a company that was split into HPE and HPI on November 2, 2015.  The operative pleading in this action is Plaintiff's Amended Complaint for Damages and Demand for Jury Trial (the "Amended Complaint") [ECF No. 1-1].

2.    HP hired Plaintiff as an Administrative Assistant on March 1, 1996.  Approximately six (6) months after, Plaintiff was promoted to the position of Business Support Specialist.

1

Amended Complaint ¶ 13.  Subsequently, Plaintiff went to work for HP's Medical Products Group (then called "Agilent") as a Financial Analyst/Emerging Markets Manager.  *Id.*  Soon thereafter, Plaintiff was promoted to Manager.  *Id.*  Plaintiff advanced 15 position levels at HP within her first eight (8) years of employment.  *Id.*  Plaintiff was able to advance her career at HP by obtaining an MBA degree and a Black Belt Certification in Lean Six Sigma.  *Id.*

3. Sadly, like many women in corporate America, Plaintiff's base salary remained substantially the same for the last fifteen (15) years of her employment.  Amended Complaint ¶ 15. Specifically, Plaintiff received a base salary under the HP's pay scale under the level M28, US1, Segment 1 (the "Pay Scale").  *Id.*  As a Finance Manager Level II, Plaintiff was assigned to one of HP's largest customer, if not the largest customer, Bank of America, an account that at all relevant times to this action generated net profits to HP in the range of $500 million/year.  *Id.*

4. Plaintiff earned a base salary of $100,000.00/year which was close to maximum base salary under Segment 1 of the Pay Scale.  Amended Complaint ¶ 16.  However, the Pay Scale has five (5) segments.  *Id.*  In fact, the maximum salary under Segment 5 of the Pay Scale is $164,000.00/year.  *Id.*  Plaintiff remained at Segment 1 of the Pay Scale for the last fifteen (15) years.  In addition, Plaintiff received performance bonuses in the $6,000 to $8,000 range.  *Id.*

5. James Mitchell ("Mr. Mitchell") was the manager that set Plaintiff's compensation during the last eight (8) years of her employment with HP.  Amended Complaint ¶ 17.  Plaintiff complained to Mr. Mitchell about her salary every year in the weeks leading up to the annual performance review.  *Id.*  In response, Mr. Mitchell would openly show his discriminatory animus towards Plaintiff on the basis of her sex by stating that "*you're fine where you are, there are men in the group that have families*" suggesting that because Plaintiff was a female, Plaintiff did not deserve to get a raise.  *Id.*

6. As a result of Mr. Mitchell's intentional gender discrimination in setting Plaintiff's compensation, including her base salary, stock options, bonuses, etc., Plaintiff ended up being among the lowest compensated Finance Manager II in HP. Amended Complaint ¶ 18. In fact, at all relevant times to this action, Plaintiff earned less than all males employed by HP in the same position with the exception of 1-3 males depending on the calendar year, but those males that earned less than Plaintiff had significantly less time working for HP. *Id.*

7. Mr. Mitchell also discriminated against Plaintiff in regards to her tangible employment terms and conditions by preventing Plaintiff from being promoted to higher positions within HP. Amended Complaint ¶ 19. Plaintiff was denied the opportunity to be promoted for over forty (40) positions. *Id.* In a couple of instances, Plaintiff was offered and accepted higher positions with HP, all to come to an abrupt end in the transitional phase at the direction of Mr. Mitchell. *Id.*

8. In addition to complaining to Mr. Mitchell about her stagnant compensation, Plaintiff engaged in additional protected activity by filing an internal complaint with HP through undersigned counsel on August 4, 2015. Amended Complaint ¶ 20. Further, Plaintiff engaged in additional protected activity by filing a lawsuit against HP on August 31, 2015 for gender discrimination pursuant to the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA") with this Court ("Andreu I"). *Id.*

9. After engaging in the protected activity set forth above, HP unlawfully terminated Plaintiff's employment on October 1, 2015. Amended Complaint ¶ 21. The ultimate decision to terminate Plaintiff's employment with HP was made by Mr. Mitchell, the same individual that blatantly demonstrated his discriminatory animus towards Plaintiff, year after year, because of her gender. *Id.*

10. HP used a pretext reason to terminate Plaintiff's employment regarding an internal investigation relating to the booking of certain journal entry transactions that did not cause any economic harm to the company. Amended Complaint ¶ 22. In fact, the booking of the journal entry transactions was directed to be made by other employees of HP, another group of employees of HP in Mexico actually made the booking of the financial transactions, and the journal entry transactions had to be directed because of poor performance of yet another employee of HP. *Id.* Yet, Plaintiff is the only employee that suffered disciplinary action in connection with the journal entry transactions that HP used as a pretext to terminate her employment after Plaintiff had engaged in systematic and continuous protected activity. *Id.*

11. In addition, during her tenure at HP, was also discriminated based on her national origin (Hispanic, born in Cuba). In 2000, the first person to discriminate Plaintiff was Carlos Fajer (Mexican), a Finance Director of HP that told Plaintiff that she would never be able to fit in because she was not from one of the nationalities that they accepted in Latin America, the region that was assigned to Plaintiff. Amended Complaint ¶ 23. Then, in 2003, Gretchen Stephenson (American Caucasian), Plaintiff's manager at the time, made comments that Latin America wasn't a significant enough region and that "you guys aren't as important as other regions of the world" berating Hispanics in general. *Id.* Lastly, during her last years of employment with HP, Mr. Mitchell would often make inappropriate comments about Hispanics. Specifically, Mr. Mitchell would say things that had double meaning like "*you Hispanics, you are little firecrackers and you're little –you Hispanics are all –I've got to be scared of you.*" *Id.*

## **MEMORANDUM OF LAW**

### I.  Legal Standard

Motions to dismiss are viewed with disfavor and are rarely granted. *Test Masters Educ. Servs. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005); *Shipp v. McMahon,* 199 F.3d 256, 260 (5th Cir. 2000). A complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998). "In evaluating the sufficiency of a complaint, a court must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff." *Beck v. Deloitte & Touche*, 144 F.3d 732, 735 (11th Cir. 1998). "In seeking a dismissal for failure to state a viable claim, a defendant thus bears the '**very high burden**' of showing that the plaintiff cannot conceivably prove any set of facts that would entitle him to relief." *Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1321 (M.D. Fla. 2007) (emphasis added). As set forth herein, Defendants does not come close to satisfying his very high burden.

Under Fed. R. Civ. P. 12(b)(6), a court shall grant a motion to dismiss where, based upon a **dispositive issue of law**, the factual allegations of the complaint cannot support the cause of action. *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (emphasis added). Indeed, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a complaint must contain "sufficient factual matter, **accepted as true**, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570) (emphasis added). Dismissal under Rule 12(b)(6) for failure to state a claim is therefore limited to those instances where it is certain that no relief could be granted under any set of facts that could be proved. *Kuhns v. CoreStates Fin. Corp.*, 998 F. Supp. 573 (E.D. Pa. 1998); *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3rd Cir.

1988); *Angelastro v. Prudential-Bache Securities, Inc.*, 764 F.2d 939, 944 (3rd Cir. 1985), *cert. denied*, 474 U.S. 935, 106 S. Ct. 267, 88 L. Ed. 2d 274 (1985).

Nonetheless, a complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor. *Twombly*, 550 U.S. at 555. A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## II. Res Judicata Is An Improper Ground For Dismissal Of The Amended Complaint Because The Elements Of Res Judicata Are Not Met

Although this Court must apply Florida res judicata law, the res judicata standard under federal law is materially the same as the standard under Florida law. *See Hooker v. Sec'y, United States VA*, 607 F. App'x 918, 920 (11th Cir. 2015); *Philip Morris USA, Inc. v. Douglas*, 110 So. 3d 419, 425 (Fla. 2013). "A claim is barred by res judicata if each of the following elements is satisfied: (1) there is a final judgment on the merits, (2) the decision was rendered by a court of competent jurisdiction, (3) the parties . . . are identical in both suits, and (4) the cases involve the same cause of action." *Hooker*, 607 F. App'x at 920. Two out of the four elements are not satisfied here. Specifically, a final judgment on the merits has not been rendered in *Andreu I* and the FCRA claim brought in the case at bar does not involve the same cause of action as the EPA claim brought in *Andreu I*.

### 1. A final judgment on the merits has not been rendered in *Andreu I*

Even though the Eleventh Circuit Court affirmed this Court's grant of summary judgment in favor of HP in *Andreu I*, a final order has not been rendered in *Andreu I* because Plaintiff filed a Petition for Rehearing and Rehearing *En Banc*. Plaintiff's Petition for Rehearing will likely be granted because the Court's decision, and the Eleventh Circuit's Panel Opinion affirming, are in conflict with other decisions of the Eleventh Circuit Court and the United States Supreme Court

decisions, as well as against public policy.  Assuming *arguendo* that even if the Eleventh Circuit Court does not grant Plaintiff's Petition for Rehearing, a final order in *Andreu I* will not be rendered for a significant amount of time as Plaintiff fully intends to file a Petition for Writ of Certiorari with the United States Supreme Court.

> **2. The FCRA claim brought in the case at bar does not involve the same cause of action as the EPA claim brought in *Andreu I***

Contrary to Defendants' Motion to Dismiss, Plaintiff's claims in this action arising under the Florida Civil Rights Act ("FCRA") and the EPA claim are not the same and could not have been brought together in *Andreu I*.  "A cause of action founded on a federal statute is not the same cause of action as one founded on a state statute, even where both statutes apply the same transaction or occurrence." *Andujar v. National Property and Cas. Underwriters*, 659 So. 2d 1214, 1216 (4th DCA 1995).  Although the same evidence would probably sustain Plaintiff's causes of actions, the causes of action are different.  Causes of actions are not "identical merely because the same evidence would establish them." *Andujar*, 659 So. 2d at 1216.  Rather, "causes of action must arise under the same sovereign's laws in order to be identical." *Id.*  "[A] cause of action founded on a federal statute is not the same cause of action as one founded on a state statute, even where both statutes apply to the same transaction or occurrence." *Id.*

"[A] Florida citizen [like Plaintiff here] who claims to have suffered from invidious discrimination in employment has at one and the same time a remedy under the federal laws protecting against illegal discrimination in employment and a remedy under Florida law protecting against illegal discrimination in employment." *Id.*  "That these separate rights may be implicated in the same conduct of her employer does not make her separate claims the same cause of action for purposes of res judicata." *Id.*

7

In *Andujar*, the court concluded that the plaintiff's Title VII claim was not the same as her claim under the Florida [Civil] Rights Act because the two causes of "arise from separate rights recognized and protected by different sovereigns." *Id.* The court reasoned the Title VII claim was clearly different from the Florida Civil Rights Act claim because they had different procedural requirements. *Id.* While the Title VII claim requires the submission of the claim to the EEOC for investigation and file suit within 90 days of receiving a right to sue letter from the EEOC, under the Florida Rights Act the plaintiff must submit a complaint with an agency for investigation and file suit when the agency takes final action or within the passage of 180 days. *Id.*

Similarly, it is clear that Plaintiff's EPA claim, a federal claim, is not the same as her claim under the Florida Civil Rights Act, a state law claim. Besides arising under different sovereign's laws, an individual alleging a violation of the EPA may go directly to court and is not required to file an EEOC charge beforehand. However, an individual is required to file a charge with the EEOC or the Florida Commission on Human Relations ("FCHR") within 365 days of the alleged violation prior to filing a civil suit under the FCRA. The FCHR must make a reasonable cause determination before a plaintiff can file a civil suit. *Woodham v. Blue Cross & Blue Shield of Fla.*, 829 So. 2d 891, 894 (Fla. 2002). Thus, Plaintiff's claims also arise from separate rights recognized and protected by different sovereigns. Moreover, Defendants', predecessor-in-interest HP, agrees that Plaintiff's EPA claim is different than a Title VII claim, which is the federal court equivalent to a Florida Civil Rights Act claim. Specifically, in Defendants' Response to Plaintiff's Objections to the Magistrate's Report and Recommendations, Defendants argued, "*if a plaintiff believes she has been paid less because of her gender, and—unlike Plaintiff here—can prove as much, she can pursue a Title VII claim that does not have the same 'same establishment' test.*"

In addition, the facts and evidence required to succeed in an EPA claim differ from those required to succeed in a FCRA claim. To succeed in an EPA claim, Plaintiff must show that

Defendants pay different wages to male employees for equal work on jobs the performance of which requires equal skill, effort, and responsibility. *Mulhall v. Advance Sec.*, 19 F.3d 586, 590 (11th Cir. 1994). Conversely, a FCRA claims are liberally construed and do not require evidence of male comparators.

Defendants rely on *Giles v. Wal-Mart Stores East LP* to conclude that Plaintiff's claims are related. *See Giles v. Wal-Mart Stores East LP*, 498 Fed. Appx. 887 (11th Cir. 2012). However, this federal case is not binding on this Court because it is an unpublished decision. *See* 11th Cir. R. 36-2 ("Although unpublished opinions may be cited as persuasive authority, they are not considered binding precedent."); *Guzman v. Irmadan, Inc.*, 551 F. Supp. 2d 1368, 1373 (S.D. Fla. 2008). Even if this case was binding on the Court, which it is not, it is clearly distinguishable to the present case.

In *Giles*, after litigating two Title VII suits, the plaintiff filed a new action with different claims, including a new claim under the EPA. *Giles*, 498 Fed. Appx. at 888. The court held that the plaintiff's new suit was barred by res judicata because the plaintiff's instant complaint arose from the same factual predicate as his two earlier Title VII suits against the same defendant. *Id.* at 889.

Despite being an inapplicable federal case to this action that arises solely under Florida state law, there is a distinct disparity between *Giles* and the present case. In *Giles*, the plaintiff had the opportunity to bring the EPA claim with the Title VII claims but omitted the EPA for "negligence, retaliation, harassment, and wrongful termination." *Id.* In other words, because the plaintiff had met the condition precedent for the Title VII claims prior to filing the EPA claim, nothing stopped the plaintiff from filing both claims together. Conversely, Plaintiff was not fortunate enough to have the opportunity to bring the FCRA claim in the EPA litigation because Plaintiff had not met the condition precedent of filing a claim with the EEOC nor obtained the right to sue letter prior to filing the EPA complaint. Plaintiff could not have brought the EPA claim

and FRCA claim together. While the EPA claim does not require a condition precedent, the FCRA claim requires a condition precedent of filing a claim with the EEOC or FCHR. If Plaintiff would have waited to bring the two claims together, she would have loss a substantial amount of damaged because filing of an EEOC charge does not toll the statute of limitations. Plaintiff promptly filed the EPA claim to avoid losing damages resulting from waiting to meet the condition precedent required for an FCRA, which can take an undetermined amount of time. In fact, despite having filed an EEOC charge on April 1, 2016, Plaintiff did not receive a right to sue letter until December 13, 2016. Thus, had Plaintiff not filed the EPA claim until she met the condition precedent to file the FCRA claim, she would have lost nine months of back pay.

Defendants also erroneously rely on *Hodges v. Publix Supermarkets* and *Davila v. Delta Airlines* to argue that Plaintiff's FCRA claim is barred by res judicata. However, *Hodges v. Publix Supermarkets* is inapplicable because it is an unpublished decision and is therefore not binding on this Court. 11th Cir. R. 36-2. Further, *Hodges* is distinguishable because at the time Plaintiff satisfied her condition precedent to bring the FCRA claims, this Court had already entered judgment against Plaintiff in *Andreu I* and it was procedurally impossible to bring the FCRA claims in *Andreu I* whereas the Plaintiff in *Hodges* could have amended his complaint in the first action to bring the FCRA claim. In addition, while *Davila v. Delta Airlines* is a published case, it is inapplicable because it is not analogous to the present case. In *Davila v. Delta Airlines*, the plaintiff's two causes of action arose out of federal law. First, the plaintiff petitioned the district court pursuant to 45 U.S.C. §§ 153(q) and 184 to vacate a grievance charge decision by the Delta's System Board of Adjustment. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1186-1187 (11th Cir. 2003). Then, the plaintiff filed an ADA claim in the state Circuit Court for the Seventeenth Judicial Circuit, in and for Broward County, Florida. *Id.* Even though filing the ADA claim required a condition precedent that the initial cause of action did not, both causes of action are founded on a federal statute. *Id.*

Conversely, Plaintiff's causes of actions arise from separate rights recognized and protected by different sovereigns. While Plaintiff's EPA claim is founded on federal law, her FCRA claim is founded on state law. Thus, *Davila* holding does not apply, and Plaintiff's claim FCRA claim is not barred by res judicata.

### III. Judicial Estoppel Bars Defendants' Argument That Plaintiff's EPA Claim And FCRA Claim Arise Out Of The Same Nucleus Of Operative Fact

Defendants are judicially estopped from arguing that Plaintiff's claims are related. Judicial estoppel is an equitable doctrine invoked at a court's discretion. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). "Under this doctrine, a party is precluded from 'asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.'" *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002). "Judicial estoppel is an equitable concept intended to prevent the perversion of the judicial process." *Id.* (citing James W. Moore's Federal Practice § 134.30, p. 134-62 (3d ed. 2000)). "The purpose of the doctrine, 'is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Id.* (citing *New Hampshire*, 532 U.S. at 749-50).

In *New Hampshire*, the Supreme Court observed that "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *New Hampshire*, 532 U.S. at 750-51. Nevertheless, the Supreme Court in *New Hampshire* enumerated several factors to inform a court's decision whether to apply the doctrine in a particular case. *Id.* Courts typically consider: (1) whether the present position is clearly inconsistent with the earlier position; (2) whether the party succeeded in persuading a tribunal to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding creates the perception that either court was misled; and (3) whether the party advancing the inconsistent position would derive an unfair advantage on the opposing party. *Id.*

In its Response to Plaintiff's Objections to the Magistrate's Report and Recommendation in *Andreu I*, HP argued that Plaintiff can pursue a Title VII claim, the federal law quasi equivalent to a state law claim under FCRA, if Plaintiff believes that Defendants discriminated against her on the basis of sex because the Title VII claim does not have the "same establishment" test required under an EPA claim.

If Defendants are allowed to change its position now, this Court would be approving the ultimate perversion of judicial process, and as a result, Defendants would derive an unfair advantage on Plaintiff. In other words, all three (3) factors enunciated by the Supreme Court in *New Hampshire* are present here. Consequently, this Court should find that Defendants are judicially estopped from arguing that Plaintiff's claims are related.

Moreover, this FCRA case and the prior EPA lawsuit are not related, as the burden of proof for a claim for sex discrimination arising under the FCRA and the EPA is substantially different (as HP itself has noted), the damages available to a plaintiff under the FCRA are substantially different than those available under the EPA, and this action raises other factual issues regarding national origin discrimination that were not even addressed in the EPA litigation.

**IV.     Plaintiff Did Not Split Causes Of Action**

"Res judicata and impermissible splitting of causes of action are not interchangeable concepts barring the bringing of claims." *Tyson v. Viacom, Inc.*, 890 So. 2d 1205, 1211 (4d DCA 2005). "Because the rule against splitting causes of action is only one aspect of res judicata, it logically follows that if res judicata is not a bar to the bringing of a claim, impermissible splitting of causes of action is not either. *Id.*; *State v. Freund*, 626 So. 2d 1043, 1045 n. 1 (4d DCA 1993) (stating that collateral estoppel is an aspect of res judicata); *Saenz v. Saenz*, 602 So. 2d 973, 974 n. 1 (3d DCA 1992). Thus, it follows that because Plaintiff's claims are not barred by res judicata for the aforementioned reasons, Plaintiff has not split causes of action.

## V. Federal Courts Sitting In Diversity Jurisdiction Must Apply State Res Judicata Law

In deciding the Motion to Dismiss, this Court must apply state res judicata law because "federal courts sitting in diversity cases, when deciding questions of substantive law, are bound by state court decisions as well as state statutes." *See e.g.*, *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). "Federal courts in diversity cases must respect the definition of state-created rights and obligations by the state courts." *Byrd V. Blue Ridge Rural Elec. Coop.*, 356 U.S. 525, 535 (1958). [F]ederal courts should conform as near as may be . . . to state rules even of form and mode where the state rules may bear substantially on the question whether the litigation would come out one way in the federal court and another way in the state court if the federal court failed to apply a particular local rule." *Id.* at 536-37.

Here, applying federal res judicata law to determine if Plaintiff's FCRA claim is barred will lead to a different result than if state res judicata law were applied. When applying federal res judicata law, federal courts conclude that EPA claims and FCRA claims arise out of the same nucleus of operative fact even though the two causes of action arise under the laws of different sovereigns. **Conversely, when applying state res judicata law, state courts conclude that res judicata does not bar a subsequent FCRA claim despite an earlier EPA claim because the causes of action arise out of the laws of different sovereigns**. *Andujar*, 659 So. 2d at 1216. Evidently, the outcome of the case would be substantially affected by whether the issue of res judicata is determined by state or federal law. *See Byrd*, 356 U.S. at 537 (stating that a strong case would appear for saying that the federal court should follow state practice if the outcome would otherwise differ).

## VI. Plaintiff Timely Exhausted Her Administrative Remedies in Regards to Her National Origin Discrimination Claim

Defendants' acknowledge that Plaintiff pled that she suffered national origin discrimination during the last years of her employment with HP, yet despite this allegation that this Court must take as true, Defendants want to impermissible persuade this Court to go beyond the four corners of the Amended Complaint to determine that she did not timely exercise her administrative remedies. Giving Plaintiff every reasonable inference in her favor at this motion to dismiss stage in light of Plaintiff's allegations, the Court should summarily reject Defendants' arguments in this regard.

**WHEREFORE**, for the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss.

Dated: May 22, 2017

Respectfully submitted,

LAW OFFICES OF RODRIGO S. DA SILVA, P.A.
1001 Brickell Bay Drive, 9th Floor
Miami, Florida 33131
E-mail: rodrigo@rdasilvalaw.com
Telephone:   (305) 615-1434
Facsimile:    (305) 615-1435

By: */s/ Rodrigo S. Da Silva*
RODRIGO S. DA SILVA, ESQ.
Florida Bar No. 0088600
*Counsel for Plaintiff, Maria Andreu*

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2017, I filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Rodrigo S. Da Silva*
RODRIGO S. DA SILVA, ESQ.